**THE LONG LAW FIRM, PLLC**
James Austin Long
120 E. WASHINGTON STREET, SUITE 928
SYRACUSE, NEW YORK 13202
Tel: 315-991-8000
jlong@long.law

**WITTELS MCINTURFF PALIKOVIC**
Ethan D. Roman*
305 BROADWAY, 7TH FLOOR
NEW YORK, NEW YORK 10007
Tel: 914-775-8862
edr@wittelslaw.com

**pro hac vice application forthcoming*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**MARIA TIONGSON,**

On Behalf of Herself and All Others Similarly Situated,

**Plaintiff,**

**v.**

**MINDVALLEY INC.,**

**Defendant.**

Case No.: 2:26-cv-01270

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Maria Tiongson, by her undersigned attorneys, The Long Law Firm, PLLC and Wittels McInturff Palikovic, brings this consumer protection action in her individual capacity and on behalf of a class of consumers defined below against Defendant Mindvalley Inc. (hereafter, "Defendant" or "Mindvalley") and hereby alleges the following with knowledge as to her own acts and upon information and belief as to all other acts:

## INTRODUCTION

1. This is a proposed class action lawsuit challenging Mindvalley's material misrepresentations and omissions that it uses to trick consumers into paying for unwanted, pricey subscriptions for wellness and self-help programs. Mindvalley intentionally misleads consumers into thinking that a subscription to a Mindvalley offering lasts only for a discrete period. The truth, however, is that Mindvalley hides "disclosures" that its subscription instead automatically renews. Mindvalley hides the truth both before and after consumers purchase a subscription and any disclosures it provides fall far short of the minimum standard required by law for companies that offer subscriptions. Furthermore, Mindvalley intentionally makes its subscriptions difficult to cancel and refuses to honor cancellations, instead charging consumers who cancelled for additional renewals. Mindvalley also misleads consumers regarding its "risk-free" refund guarantee, both by obscuring how to obtain a refund, and by refusing to honor refunds for those consumers who do manage to complete the intentionally complicated process.

2. Mindvalley offers a suite of online products and services that purport to help consumers achieve personal growth. Mindvalley calls itself "the world's most effective transformation platform" and promises "a better you every day."

3. As more and more commerce is conducted online, many firms boost profits by enrolling customers into automatically renewing subscriptions.

4. Knowing that "[b]ecause subscriptions are automatically renewed, consumers who are inertial or not fully attentive may continue to pay for services they no longer value[,]"[1] some companies use unlawful practices, such as "risk-free" trials that are hard to cancel and then convert into paid subscriptions, inadequate disclosure of recurring charges, cancellation policies, and other deceptive tactics—to lure customers into paying for subscriptions they do not actually want.

5. The New Jersey Consumer Fraud Act, N.J. Rev. Stat. § 56.8-1 et seq. ("CFA") was designed to combat the increasingly widespread practice of businesses defrauding consumers. In enacting the CFA, the New Jersey Legislature intended to "give New Jersey one of the strongest consumer protection laws in the nation."[2]

6. The CFA prohibits, *inter alia*:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise . . .

CFA § 56:8-2.

7. Mindvalley engages in numerous deceptive tactics barred by the CFA and the common law in at least three ways.

8. ***First***, Mindvalley advertises a "100% risk-free" 15-day trial that consumers can "[c]ancel within 15 days, one-click" to obtain a full refund. But in reality, Mindvalley imposes a secret requirement for consumers who cancel within fifteen days to obtain a refund, requiring them to navigate a confusing, nine-step process to "initiate a refund." Even then, Mindvalley refuses to

---

[1] Liran Einav, Benjamin Klopack & Neale Mahoney, *Selling Subscriptions*, Nat'l Bureau of Econ. Research (NBER), Working Paper No. 31547 (Aug. 2023), https://www.nber.org/papers/w31547.

[2] *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 15 (citing Governor's Press Release for Assembly Bill No. 2402, at (Apr. 19, 1971)).

honor its promised refund to consumers who manage to ferret out Mindvalley's undisclosed policy and successfully request a refund.

9. ***Second***, Mindvalley makes canceling a subscription exceedingly difficult and requires consumers to navigate—with no help from Mindvalley—a lengthy and confusing process of at least nine steps across at least five screens. This process obstructs efforts by consumers to cancel their subscriptions and leads to large numbers of unwanted automatic renewals. Like with refunds, Mindvalley refuses to honor cancellations and subjects consumers to additional renewal charges even after they cancel.

10. ***Third***, Mindvalley makes material misrepresentations and omissions regarding the automatically renewing nature of its subscriptions, both before and after consumers enroll. Mindvalley's misrepresentations and omissions prevent consumers from being able to make intelligent decisions in the selection of products or services.

11. All Mindvalley customers face this same gauntlet and need only be tricked by one of Mindvalley's traps to end up paying a hefty fee for an illegal subscription.

12. It is not happenstance that so many of Mindvalley's customers are paying for illegal subscriptions. This outcome is the desired result of Mindvalley's intentional and bad-faith design choices. Mindvalley knows its scheme is tricking customers as hundreds of consumers have complained directly to Mindvalley or via sites like Trustpilot, SiteJabber, and Reddit. Upon information and belief, Mindvalley experiences a high rate of chargebacks from consumers disputing unwanted charges caused by Mindvalley's subscription scheme, and it has developed customer service protocols specifically to deal with these complaints.

13. Despite the clear messages Mindvalley's customers are sending, Defendant continues to subject consumers to its unlawful subscription scheme and to reap significant monetary benefits from its misconduct.

14. Only through a class action can consumers like Plaintiff remedy Mindvalley's unlawful practices. Because the monetary damages suffered by each customer are small in comparison to the much higher cost a single customer would incur in trying to challenge Mindvalley's improper conduct, it makes no financial sense for an individual customer to bring his or her own lawsuit. Furthermore, many customers do not realize they are victims of Mindvalley's unlawful acts and continue to be charged to this day. With this class action, Plaintiff and the Class seek to level the playing field, enjoin Mindvalley's unlawful business practices, and recover the charges Mindvalley has imposed on them in violation of the law.

## JURISDICTION AND VENUE

15. This Court has personal jurisdiction over Mindvalley because Mindvalley conducts substantial business in New Jersey, has sufficient minimum contacts with New Jersey, and otherwise purposely avails itself of the privileges of conducting business in New Jersey by marketing and selling products and services in New Jersey. Further, the injuries to New Jersey consumers that Plaintiff seeks to prevent through public injunctive relief arise directly from Mindvalley's continuing conduct in New Jersey, including, but not limited to, directing its subscription practices at New Jersey consumers.

16. This Court has jurisdiction over the claims asserted in this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the aggregate claims of the Class exceed the sum or value of $5,000,000, the Class has more than 100 members, and diversity of citizenship exists between at least one member of the Class and Mindvalley.

17. This Court has original subject matter jurisdiction over all claims in this action pursuant to the Class Action Fairness Act. However, if the Court determines that it lacks original jurisdiction over any claim in this action, it may exercise supplemental jurisdiction over Plaintiff's claims under 28 U.S.C. § 1367 because all of the claims arise from a common nucleus of operative facts and are such that Plaintiff ordinarily would expect to try them in one judicial proceeding.

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b). Substantial acts in furtherance of the alleged improper conduct occurred within this District, as Plaintiff resides in this District, and Mindvalley resides in this District for venue purposes. *See* 28 U.S.C. § 1391(c)(2).

## PARTIES

19. Plaintiff Maria Tiongson is a citizen of New Jersey. Plaintiff is a consumer who was victimized by Mindvalley's unlawful subscription scheme, suffered ascertainable injury in fact, and lost money because of Mindvalley's violations of consumer protection statutes and the common law.

20. Defendant Mindvalley Inc. is a Delaware corporation with its principal place of business in Kuala Lumpur, Malaysia. Mindvalley offers online courses in a variety of areas loosely centered on wellness and personal growth. Representative courses include:

- The "Silva Ultramind System," taught by Mindvalley's Founder and CEO, Vishen Lakhiani, who promises consumers will "[l]earn to naturally access alpha, theta, and delta brainwave states to channel your mind's full creative potential";[3]
- "The Art of Manifesting," which promises "breakthroughs" such as "being able to create visions so clear and powerful, they become inevitable," and "[k]nowing how to bend the fabric of time and space to your desires";[4] and

[3] https://home.mindvalley.com/quests/en/ultramind.

[4] https://home.mindvalley.com/quests/en/manifesting.

- "Quantum Jumping," which claims to teach consumers to "enter the alpha level of mind: where you visualize yourself soaring through the multiverse, and meeting alternate versions of you" and "traveling through time, and meeting yourself in past lives."[5]

## FACTUAL ALLEGATIONS

### A. Background on the Subscription e-Commerce Industry

21. The e-commerce subscription model is a business model in which retailers provide ongoing goods or services "in exchange for regular payments from the customer."[6] The sector "has exploded in recent years, by one estimate growing by over 400% over the past decade," such that "subscription revenue is expected to reach $1.5 trillion" in 2025.[7]

22. Though it provides convenience to some consumers, there are well-documented downsides associated with the subscription-based business model. In particular, retailers may realize far more profit by locking consumers into recurring subscriptions than by working to improve their products or focusing only on charging consumers for products they actually want. One paper "estimates that inattention and more passive renewal lead to a substantial increase in revenues for subscription services, which could be as high as ***three times greater*** than the revenues they would receive if subscribers were fully attentive and made an active renewal decision each month."[8]

23. Recognizing the profitability of recurring subscriptions, many companies utilize deceptive sign-up processes designed to lure consumers into enrollment, and misleading

[5] https://home.mindvalley.com/quests/en/quantum.

[6] *See* Sam Saltis, *How to Run an eCommerce Subscription Service: The Ultimate Guide*, CORE DNA, https://www.coredna.com/blogs/ecommerce-subscription-services.

[7] Emily Stewart, *Companies Love Trapping People in Subscriptions. Savvy Consumers Are Fighting Back.*, Business Insider (July 24, 2025), https://www.businessinsider.com/free-trials-consumers-subscription-economy-2025-7.

[8] *See* Einav et al., *supra* n.1, at 17.

cancellation processes designed to prevent them from canceling or, as here, securing refunds. As one recent report observed, "[c]ompanies have gotten increasingly savvy at trapping consumers in what are known as 'dark patterns,' drawing them in with a shiny new product or discounted subscription that ends up being burdensome to get out of."[9]

24. The term "dark patterns," first coined in 2010 by the cognitive scientist Harry Brignull, is a term of art in user-experience ("UX") design, referring to interface strategies intentionally crafted to manipulate consumer choice. The Federal Trade Commission defines them as "practices that trick or manipulate users into making choices they would not otherwise have made and that may cause harm."[10] A report by Nielsen Norman Group, a globally-recognized UX consultancy, defines a dark pattern as "a design pattern that prompts the user to take an action that benefits the company employing the pattern by deceiving, misdirecting, shaming, or obstructing the user's ability to make another (less profitable) choice."[11]

[9] Ayelet Sheffey, *America's Nightmare of Never-Ending Subscriptions*, Business Insider (Oct. 19, 2024), https://www.businessinsider.com/america-subscriptions-nightmare-recurring-payments-cancellation-company-tricks-trap-customers-2024-10?utm_source=chatgpt.com.

[10] Fed. Trade Comm'n, *Shedding Light on Dark Patterns: An FTC Report on How Manipulative Design Is Used Against Consumers*, at 1 (Sept. 14, 2022), https://www.ftc.gov/system/files/ftc_gov/pdf/P214800+Dark+Patterns+Report+9.14.2022+-+FINAL.pdf.

[11] Maria Rosala, *Deceptive Patterns in UX: How to Recognize and Avoid Them*, Nielsen Norman Group (Dec. 1, 2023), https://www.nngroup.com/articles/deceptive-patterns/.

25. The following image provides examples of commonly employed dark patterns:[12]




26. As the FTC explains, "dark patterns often take advantage of consumers' cognitive biases to steer their conduct or delay access to information needed to make fully informed decisions."[13] The image on the following page provides examples of cognitive biases, including some that Mindvalley exploits in its enrollment, cancellation, and refund processes:

---

[12] Sarbashish Basu, *What is a dark pattern? How it benefits businesses- Some examples*, H2S MEDIA (Dec. 19, 2019), https://www.how2shout.com/technology/what-is-a-dark-pattern-how-it-benefit-businesses-with-some-examples.html.

[13] FTC, *Shedding Light on Dark Patterns*, *supra* n.10, at 2.




27. As the subscription industry has grown, so too has the use of dark patterns. According to the FTC:

> For decades, unscrupulous direct mail marketers and brick-and-mortar retailers have relied on design tricks and psychological tactics . . . to get consumers to part with their money or data. As more and more commerce has moved online, so too have these manipulative design practices—termed 'dark patterns'—only grown in scale and sophistication, creating ever greater challenges for consumers.[14]

28. Mindvalley has engaged in these kinds of subscription practices with great success. Publicly available evidence suggests Mindvalley generates $150 million in annual revenue, with a

[14] FTC, *Shedding Light on Dark Patterns*, *supra* n.10, at 17.

"40% annual growth rate."[15] Mindvalley advertises a "community of more than 10 million people (and expanding)[.]"[16]

**B. Mindvalley's Enrollment Process Violates the CFA**

29. Mindvalley has unique access to its historical enrollment pages. At all relevant times, Mindvalley funnels users to a universal payment page through two materially identical enrollment flows: one for users subscribing to a general membership, and one subscribing to a membership through a specific course.

30. The two flows, which lead the user to the same payment page, do not differ materially in the substance of the disclosures they provide to prospective consumers or their concealment and/or admission of material facts that consumers are intended to rely on when signing up for a Mindvalley subscription.

**1. General Membership Enrollment Flow**

31. On navigating to mindvalley.com, users are immediately solicited for membership, with the promise of "[a] better you every day" and a prominently displayed offer to "Become a member," as shown on the following page:

[15] https://stripe.com/en-mx/customers/mindvalley.

[16] https://careers.mindvalley.com/manifesto.




32. Clicking the "Become a member" button directs the user to Mindvalley's general membership enrollment page (the "General Enrollment Page"). On arriving, the user is presented with a single, centrally located, and brightly colored button in high contrast with its background, inviting the user to "Become a member":




33. Clicking on this button does not navigate to another web page. Instead, the button is a "jump link" designed to immediately propel the consumer to a purchase solicitation at the bottom of the same web page. This "jump link," which scrolls down the web page in less than one second, bypasses all intervening information and, by design, deprives the user of a chance to review the page's full content. This tactic obscures facts that are material to consumers' ability to make intelligent decisions in the selection of products or services and instead pushes the user toward an immediate transaction. Below is a reproduction of what consumers see after clicking the "Become a member" button:[17]

[17] This rapid scroll down to the enrollment link bypasses all content located between the top of the page and the payment link. This additional content is intentionally hidden from the user.




34. Mindvalley unlawfully misrepresents its refund policy as "100% Risk-Free: Cancel within 15 days, one-click." This representation is untrue for at least two reasons. ***First***, Mindvalley customers seeking a refund must not only cancel, but must also affirmatively request a refund. ***Second***, as will be shown below, affirmatively requesting that refund is not a matter of "one-click," but a lengthy process requiring the consumer to navigate numerous windows and dark patterns. Mindvalley's description of its refund policy is a material misrepresentation connected with the sale of Mindvalley's subscriptions which Mindvalley knows or should reasonably know is untrue and misleading.

35. Mindvalley's solicitation also omits, conceals, and suppresses additional material facts to deceive consumers and prevent them from making an informed decision. Mindvalley fails to inform consumers that the subscription will automatically renew until canceled, explain how a consumer can cancel, make clear that recurring charges will be imposed automatically (instead of, for example, through consumer opt-in at the end of the payment period), or state the length of the autorenewal term (or that it will be continuous). Based on the terms shown, a reasonable consumer would understand Mindvalley to be offering a one-time, fixed-term membership of either one

month or one year. In truth, no matter what option the user selects, at the end of the specified term, Mindvalley will automatically re-enroll the user for an additional subscription term.

36. Worse, what little information Mindvalley does provide is presented deceptively. Though it offers both "Monthly" and "Yearly" plans, Mindvalley pre-selects a one-year term to lock in a longer user commitment at a higher price, and employs dark patterns to take advantage of consumer inertia to have consumers default to the yearly plan (*e.g.*, highlighting the 1-year option in bright purple against the plain black-and-white of the monthly option, deploying a bright green box to advertise the "savings" of the 1-year option, placing both "yearly" and "monthly" in vanishingly small text obscured by attractive slogans and a brightly colored invitation to enroll). Mindvalley also does not contain a link to its terms and conditions, depriving the user of an easily accessible means of learning more about Mindvalley's offers.

37. Mindvalley's solicitation banner fails to obtain the consumer's affirmative consent. Its misrepresentation of a "100% risk-free" cancellation policy (*supra* ¶ 34), its omission of the automatic renewal offer terms (*supra* ¶ 35), and its use of deceptive dark-pattern design to steer consumers into the pre-selected year-long plan (*supra* ¶ 36), all operate to deceive prospective customers.

38. When users click on the "Join Membership" button, they are taken to the Mindvalley payment page, described in greater detail below. *See infra* § C.

**2. Course-Specific Enrollment Flow**

39. The course-specific enrollment flow does not materially differ from the general enrollment flow described above. Nor does this enrollment flow vary materially across different courses. Like the general enrollment flow, it operates to deceive prospective customers.

40. The layout of the course-specific enrollment page (the "Course-Specific Enrollment Page") is materially identical to the General Enrollment Page. On arriving, the user is

similarly presented with a single, centrally located, and brightly colored button in high contrast with its background, inviting the user to "Join the program":




41. Mindvalley then deploys the same "jump link" tactic it uses on its General Enrollment Page. Here, too, clicking on the "Join the program" button does not take the user to a separate page. Instead, the button is another "jump link," which propels the user directly to a purchase solicitation near the bottom of the same page. As on the General Enrollment Page, this jump occurs almost instantaneously, skipping all intervening content. By collapsing the page in this way, Mindvalley deprives consumers of an opportunity to review the page's content before being funneled into a purchase decision.

42. The first section the user lands on, reproduced on the following page, features a large promotional banner styled as an invitation to purchase a Mindvalley membership. This banner omits all automatic renewal offer terms. Instead, users are instructed to "[b]ecome a Mindvalley member now, and begin your transformational journey":




43. Directly beneath this banner is the purchase solicitation, which is reproduced on the following page:




44. The Course-Specific Enrollment Page's purchase solicitation does not materially differ from the purchase solicitation on the General Enrollment Page.

45. ***First***, the Course-Specific Enrollment Page's purchase solicitation promises, word-for-word, the same benefits of membership, including the exact same misrepresentation of the Mindvalley refund policy: "100% Risk-Free: Cancel within 15 days, one-click." On the following page are the representations from the General Enrollment Page (on the left) and the Course-Specific Enrollment Page (on the right):







46. Mindvalley's actual refund policy—requiring the user to both cancel ***and*** affirmatively request a refund—does not vary based on whether the user enrolled through the General Enrollment Page or the Course-Specific Enrollment Page. Mindvalley's identical misrepresentations are thus both untrue for the same reasons and violate the CFA in the same way.

47. ***Second***, as on the General Enrollment Page, the solicitation banner on the Course-Specific Enrollment Page omits several material facts in a way that deceives consumers and prevents them from making an informed decision. Mindvalley does not disclose that the subscription will automatically renew until canceled, explain how a consumer can cancel, explain that recurring charges will be imposed automatically (instead of, for example, through consumer opt-in at the end of the payment period), or state the length of the autorenewal term (or that it will be continuous).

48. As with the General Enrollment Page, a reasonable consumer reviewing Mindvalley's purchase solicitation would thus understand Mindvalley to be offering a one-time, fixed-term membership of either one month or one year. In truth, no matter what option the user selects, at the end of the specified term, Mindvalley will automatically re-enroll the user for an additional subscription term.

49. ***Third***, Mindvalley again pre-selects the "membership yearly" for the user and again employs deceptive dark patterns (highlighting the yearly membership in bright orange, as opposed

to the dull gray of the monthly membership, and presenting the yearly option in a larger box). Here, too, no link to Mindvalley's Terms and Conditions is provided.

50. Mindvalley's Course-Specific purchase solicitation banner deceives consumers in exactly the same way as the General Enrollment Page's solicitation banner. Both misrepresent Mindvalley's cancellation policy as "100% risk-free . . . one-click" (*see supra* ¶¶ 34, 45), omit the automatic renewal offer terms (*see supra* ¶¶ 35, 47), and use deceptive dark-pattern tactics to steer consumers into the pre-selected year-long plan (*see supra* ¶¶ 36, 49), all in service of manipulating consumers into taking the course of action most profitable to Mindvalley, rather than disclosing all material facts to prospective customers.

51. As on the General Enrollment Page, users are then presented with a "Join membership" button, which directs them to Mindvalley's payment page, which is used for both general enrollment and course-specific consumers (the "Payment Page").

**C. Mindvalley's Payment Page Violates the CFA**

52. Mindvalley's Payment Page—which is the same for all prospective Mindvalley members—is reproduced on the following page:




53. This payment page violates the CFA in multiple ways. Once again, Mindvalley misrepresents its refund policy. Under the heading "Refund / Cancellation policy," Mindvalley reassures the user to "Feel safe. 15 days for a Full refund[.]" This is misleading in two ways. ***First***, Mindvalley's heading conflates "Refund" and "Cancellation" in a manner misleading to a reasonable consumer, who would naturally understand based on this language that cancellation within fifteen days would trigger the refund of their membership fee. ***Second***, Mindvalley's promise of "15 days for a Full refund" under a heading containing the words "Cancellation policy" is deceptive, because canceling within 15 days will not, in fact, trigger a refund. Mindvalley's misleading statements violate the CFA.

54. Mindvalley's automatic renewal offer terms are also concealed. They are hidden at the bottom corner of the page, in very small, gray text in low contrast to a white background. The eye is instead drawn away from the disclosure, towards the brightly colored "Subscribe" button. As with Mindvalley's enrollment page, the payment page's design ***deemphasizes*** the notice text, rather than making it ***conspicuous***. Mindvalley's "disclosure" is not in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language. Again, Mindvalley is using the "deliberate misdirection" dark pattern to prevent its consumers from making an informed choice. Mindvalley's intentional design choices that conceal material facts violate the CFA.

55. Even if Mindvalley's disclosure was not concealed (it is), it also omits several automatic renewal offer terms that are material to consumers' ability to make intelligent decisions in the selection of products or services. First, Mindvalley never states that the subscription or purchasing agreement will continue until the consumer cancels. Second, Mindvalley says "[c]ancel anytime" but does not provide any description of how to effect cancellation. Third, Mindvalley does not state the recurring charges that will be charged to the consumer, instead stating only that the membership will renew "at the current rate"—a number not disclosed anywhere on the Payment Page. Fourth, Mindvalley omits the length of the automatic renewal term, stating only that renewal will take place "each billing period" and "at each renewal, per your plan's terms." Because Mindvalley pre-selects a one-year renewal period, *see supra* ¶¶ 36, 49, rather than prompt users to select the length of the term, this is an omission of a material fact—the length of the subscription. The only reference to the length of the billing period is the word "yearly," written in

small, low-contrast font and placed at the opposite corner of the screen—a design choice that further serves to conceal the length of the billing period.

56. Mindvalley also does not provide any clear, conspicuous link to its Terms & Conditions, and the link it does provide is not in visual proximity to the "Subscribe" button. Instead, the link is placed on the bottom left corner of the enrollment page (the opposite side of the page from the Subscribe button), in small type and light gray font in low contrast with the white background. It is not underlined or in any way designed to draw the attention of the user—even the title of the link ("Terms" rather than "Terms & Conditions") is designed to be as small and inconspicuous as possible. A reproduction of the Payment Page demonstrating the placement of the "Terms" link is shown on the following page:




57. As shown, a prospective Mindvalley member can, by design, complete the entire enrollment process without ever seeing a disclosure of the automatic renewal offer terms or an accurate representation of Mindvalley's refund policy. Through these strategic omissions and its extensive use of deceptive, "dark pattern" designs, Mindvalley manipulates consumer behavior to maximize profit, rather than disclose all material facts that would allow consumers to make an informed choice, in violation of the CFA.

58. Mindvalley's enrollment flow thus violates the CFA.

### D. Mindvalley's Post-Purchase Acknowledgment Email Violates the CFA

59. After a customer signs up for a Mindvalley membership, Mindvalley sends them an email with the subject line "Welcome to Mindvalley." An exemplar is shown below:




60. Mindvalley's post-enrollment acknowledgment email continues to omit material facts. It does not include the automatic renewal offer terms or continuous offer terms, describe the cancellation policy or how to cancel, or describe any easy-to-use mechanism for canceling.

61. Further, the "Unsubscribe" link in the above email does not direct the user to a page to cancel their subscription, but instead directs the user to a page to manage the frequency of emails they receive from Mindvalley.

**E. Mindvalley's Refund Process Is Deceptive**

62. Mindvalley repeatedly represents its 15-day "risk-free" trial process as permitting users to obtain a refund by "cancel[ing] within 15 days, one-click." This representation is untrue and misleading.

63. As noted above, Mindvalley's enrollment flow begins with a brightly colored, centrally placed button inviting the user to "Become a member" or "Join the program" and which, when clicked, propels the user to a purchase solicitation near the bottom of the page. This "jump link[,]" which scrolls down the web page in less than one second, bypasses all intervening information. In other words, the consumer is, by design, not given the chance to review the page's full content, but instead steered directly to the purchase solicitation. *See supra* at ¶¶ 31–38 (General Enrollment Page); ¶¶ 39–51 (Course-Specific Enrollment Page).

64. Among the content hidden from the user through Mindvalley's use of the "jump link" tactic is the below description of its 15-day cancellation policy:




65. To find this hidden explanation of Mindvalley's refund policy, the user would have to know to scroll back up from the purchase solicitation, as shown below (General Enrollment flow on the left, Course-Specific Enrollment flow on the right):




66. This intentionally hidden explanation also misrepresents Mindvalley's refund policy, which it describes as permitting a refund "with one click." As described in detail below, a Mindvalley user seeking a refund must navigate a series of at least five separate windows and nine clicks to secure their refund, and must take care not to just "cancel" their account—a misstep for which Mindvalley will refuse to refund the consumer's money. Mindvalley's misrepresentations violate the CFA's prohibition on misrepresenting, concealing, or omitting material facts in connection with the sale or advertisement of any merchandise, including subscriptions that automatically renew. *See* N.J. Rev. Stat. § 56:8-2.

67. Within this hidden "disclosure" is a link to Mindvalley's "Refund Page," which is reproduced on the following page:




68. Even if a consumer finds this hidden refund page, its content is deceptive in multiple ways. ***First,*** Mindvalley repeats its misrepresentation that "It's One Click to Refund Your

Mindvalley Program within 15 Days of Purchase." As described in detail below, securing a refund is a ***nine-click*** process. The page itself contains no single-click refund option that shortcuts the process.

69. On the contrary, the "Go to My Account" button does not even take the user to their account dashboard—it returns the user to the Mindvalley homepage, from which they must commence the nine-step refund process.

70. ***Second,*** the instructions Mindvalley provides are incomplete and misleading. Mindvalley states that "STEP 3" to obtain a refund requires only that the user "click the Refund link next to the program to Issue a refund.":







71. Any reasonable consumer would thus believe that, by clicking the "Refund link," they would have secured a refund. In truth, after clicking the "Refund link," the user still needs to complete ***four additional steps*** to effectuate a refund. Just clicking the Refund link would thus result in the user being deprived of their refund, contrary to Mindvalley's deceptive misrepresentation.

72. ***Third***, this page does not correspond to Mindvalley's website. For example, contrary to "STEP 2" on the Refund Page, Mindvalley's account page does not have a "Billing" option—just a button for "Billing & Subscriptions." Nor does Mindvalley's screenshot of the menu

that expands from hovering (not clicking) on a user's Profile Icon correctly depict the menu on their website.

73. Mindvalley's Refund Page is inaccurate, incomplete, and deliberately hidden from the consumer through the "jump link" tactic detailed above.

74. To obtain a refund, consumers must first navigate to Mindvalley's home page and log into their account. The home page is reproduced below: Then, the consumer must (1) hover their mouse above a tiny, unlabeled icon on the top right of the home page, as reproduced below and marked with a red arrow for clarity:




75. From there, the user must (2) select "Account" from the pop-up menu that appears below the icon. That menu is reproduced on the following page:




76. Once the user has reached their account page, they must (3) select "Billing & Subscriptions" from a list of seven options:



77. The default view of the "Billing & Subscriptions" page, reproduced on the following page, contains no mention of a cancellation or refund, and provides no guidance to the user to secure either. A bold-faced header at the bottom of the page, instead invites users to "explore other products."




78. The user must (4) click on "Subscription Settings," under the Active Subscriptions box. When clicked, the box expands, presenting two options, "Request Refund" and "Cancel Subscription":




79. Here, Mindvalley lays a trap for the refund-seeking user. Despite repeatedly treating its refund and cancellation process as unified and promising a refund to users who "Cancel within 15 days," users who click on the "Cancel Subscription" button are directed to a cancellation flow which, if effectuated, ***will not result in a refund***. At no point in this cancellation flow does Mindvalley disclose that cancellation alone will not result in a refund.

80. At this point, the user may undertake one of two processes to secure a refund, neither of which is clearly available to the consumer or easy-to-use.

81. If the user avoids the "Cancel Subscription" trap laid by Mindvalley, the user must (5) click the "Request Refund" button after expanding the "Subscription Settings" box:




82. Clicking on this link takes the user to Mindvalley's "Refund & Cancel" page. On this page, although the "Refund & Cancel" box is pre-checked, Mindvalley still seeks to nudge the user into just canceling their subscription (and thus forfeiting their refund) by placing the "Cancel Subscription" box above the Refund & Cancel box, extolling the benefits of just canceling with bright green checkmarks (as opposed to the foreboding red X's in the Refund & Cancel box), and imploring the user that "[Y]ou have an alternative!"—an alternative which Mindvalley does not disclose would deny the user their refund:




83. The user must then (6) click "Refund & Cancel," but doing so still does not trigger a refund. Instead, the user is presented with a pop-up that itself requires two additional "clicks" – the user must (7) "Tell [Mindvalley] Why You're Leaving" and (8) check a box confirming that they understand that canceling will deprive them of access to "premium features and my progress after my current billing period ends." Until the user completes both of these tasks, the Cancel Subscription button is grayed-out, inactive, and unusable, while a "Nevermind, I'm Staying"[18] button is active, and highlighted to draw the user's attention. This pop-up is reproduced on the following page.

[18] Clicking on the "Nevermind, I'm Staying" button returns the user to the "Billing & Subscriptions" page, forcing the user to repeat over half the process if they wish to cancel.




84. Only once the user has given Mindvalley their reason for seeking a refund and checked the required checkbox is the "Refund & Cancel" button activated. If the user (9) clicks the "Refund & Cancel" button, they will have finally initiated a refund.

85. As noted above, Mindvalley provides one other route to a refund: a minuscule link near the bottom of the "Billing & Subscriptions" page with the word "Refund." This link is not

visible on arrival at the "Billing & Subscriptions" page—the user must scroll down to find it, past a brightly colored banner ad offering additional Mindvalley programming:

**Explore Other Products**




Recommended

**Upgrade Your Reality and Master Manifestation** 🚀

- One Tool. Total Life Transformation.
- Master Manifestation. Rewire Reality.
- Create Wealth, Love & Success-On Demand.

**Start Manifesting Now**

**Payment History**

| Invoice No. | Product | Date | Total | Paid by | Status |
|---|---|---|---|---|---|
| INV-945438 | **Mindvalley Membership** | 20 Aug 2025 | USD 399.00 | VISA ●●● 5892 | Paid |

Eligible for refund within 15 days of purchase | Refund

86. If the user locates and (5) clicks the "Refund" link, they are taken to the Refund & Cancel page, where they must (6) click "Refund & Cancel"; (7) provide a reason for cancellation; (8) click a checkbox affirming their understanding of the effects of cancellation, and (9) click "Refund & Cancel" a second time.

87. Mindvalley's nine-step process to secure a refund is specifically and intentionally designed to thwart refund requests—a "roach motel" dark pattern—that prevents customers from

finding and securing a refund. Mindvalley's representations regarding its refund process violate the CFA because they are not, as represented, executable with "one-click," as Mindvalley repeatedly misrepresents to the consumer during the enrollment process.

88. Worse, for those consumers who manage to successfully navigate Mindvalley's byzantine refund process, Defendant promises a refund but never delivers. This is what happened to Plaintiff. *See infra* ¶¶ 100–01, 104.

89. Mindvalley's refusal to honor refund requests also violates the CFA as an unconscionable commercial practice, deception, fraud, false pretense, false promise, and misrepresentation.

**F. Mindvalley's Cancellation Process Violates the CFA**

90. Mindvalley's cancellation process requires the same first four steps as obtaining a refund. *See supra* ¶¶ 69–78 (describing how users must find and then login to their account, click on their Billing & Subscriptions link, and expand the Subscription Settings box).

91. The user must then (5) click on "Cancel Subscription," which takes them to another page which pushes users to "[s]tay now and keep your exclusive rate" and invites them, through a highlighted button, to "Explore More Options" rather than "Continue to Cancellation":




92. If the user (6) clicks "Continue to Cancellation," they are presented with a pop-up that itself requires two additional "clicks" – the user must (7) "Tell [Mindvalley] Why You're Leaving" and (8) check a box confirming that they understand that canceling will deprive them of access to "premium features and my progress after my current billing period ends." Until the user completes both of these tasks, the Cancel Subscription button is grayed-out, inactive, and unusable, while a "Nevermind, I'm Staying"[19] button is active, and highlighted to draw the user's attention. This pop-up is reproduced below.

[19] Clicking on the "Nevermind, I'm Staying" button returns the user to the "Billing & Subscriptions" page, forcing the user to repeat over half the process if they wish to cancel.




93. Only if the user selects both checkboxes are they finally presented with a "Cancel Subscription" button that, when (9a) clicked by the user, finally cancels their subscription:




94. Mindvalley's nine-step process for cancellation is specifically and intentionally designed to thwart cancellations and refund requests—a "roach motel" dark pattern—that prevents customers from canceling autorenewal. This violates the CFA because it is an unconscionable commercial practice that is designed to deceive consumers into remaining paying Mindvalley customers.

95. Worse, Mindvalley fails to respect cancellation requests and automatically renews consumers' accounts even after they cancel. This is what happened to Plaintiff. *See infra* ¶ 102.

96. Mindvalley's refusal to honor cancellation requests also violates the CFA as an unconscionable commercial practice, deception, fraud, false pretense, false promise, and misrepresentation.

**G. Mindvalley's Long History of Injurious Billing and Cancellation Practices**

97. Mindvalley's actions have harmed consumers throughout California and beyond, resulting in legions of consumers voicing their discontent online. Below is merely a small sampling of negative reviews left by subscribers regarding Mindvalley's unscrupulous practices:

**Do not give your money to this company**

Do not give your money to this company, or if you do beware. They have a 15-Day trial period where you pay $399 to sign up for an annual membership. I had reviewed their material and cancelled on day 13 and they sent me a "your subscription has been cancelled" email. Then I had been waiting for the charges to be reversed but they never were. Then about a week later, I contacted Customer Support....get this...they said, "Well, there's another location on the website you need to go to cancel your trial subscription." I sent them a copy of the email they sent me and they said, "I'm sorry, you are beyond the 15-day cancellation period and do the tax reason and some other BS, we can't refund your money. This company has deceptive sales practices and is not honorable. I suggest you be careful who you put your money with.

**Charged me after cancellation of membership**

This guys are horrible..there app doesn't work properly. I had cancelled my membership months before the due date and they still debited my account and now refuse to refund my money. After writing to them they cancelled my membership. On the app it is showing cancelled twice and still not refunding money. This is ridiculous

**Sadly money hungry scammers :(**

Requested a refund within the refund window. Didn't go through. By the time I realised was after the window had expired. No help from customer service. A scam.

**Unauthorised credit card transactions**

Mind Valley have made an unauthorised charge to my credit card. I have no subscription or any agreement with mind valley for them to make a charge. I contacted them through their "support" link and they declined to make a refund. This makes their action blatant theft and not accidental error. Their advertised intentions to help people are at complete odds with their action of theft. I need the money back to buy food.

✓ Verified

**I've been trying to unsubscribe which...**

I've been trying to unsubscribe which seems virtually impossible. You don't get an option to when you want to change the settings of your subscription. Such a spamming business...

**Scammy auto renewal practise.**

They sent me a link to cancel renewal, which never worked. Then they went ahead and charged the renewal. When I contacted them, on the day they charged, they basically replied "too bad the link didn't work, but we won't refund you either way. Scammy practise.

**Mindvalley is fooling you on purpose**

Vishen is not a badass. He is a shifty sales guy. His business model is to auto renew your membership. You don't notice and when you do you have payed 300 dollars a year for two years without even using the content. Mindvalley is in it for the money. Your money. If they had been in the business to help people they wouldn't have earned their money on fooling people to buy products that they do not want. Do yoga and qigong instead. It's practically free. Instead of having a former engineer tell you how to hold an energy ball for hundreds of dollars

**I had a horrible experience with...**

I had a horrible experience with mindvalley. they charged me for a new subscription without authorization. the customer service is horrible. I have not received anything that stated they would renew. I never checked any auto-renew box and you can only communicate through whatsapp. I believe that is illegal. I saw that there are at least 100 complaints through the better business bureau. Anyone else has done anything about this?

★☆☆☆☆

**Watch out from subscription and...**

Watch out from subscription and renewals. The customer experience is horrible!
The idea of Mindvalley is nice. I signed up hoping I'll use it more. I didn't hence didn't even occur to me to renew. To my surprise I get an email that I was charged $300 what??
I was sure I can just reach out because they can see I never used the system and was just charged today another $300. Sure enough, like the other reviews here say, they tell you "there is nothing we can do to refund this". Now I do get that if someone comes weeks or months later they cant refund but I contacted them within hours of the renewal that I didn't agree to. This company is probably going under and holding on to people that didn't realize they were on auto renew. Triple check and I would unsubscribe if I was you reading this. You can always decide to subscribe again.

★☆☆☆☆

**Greedy**

Had the subscription for a year and didn't realize it was going to renew. When I saw the charge I asked them to cancel and refund the renewal. They already had $299 for the first year which they could well see was barely used, only in the beginning. No refund. Very disappointing for people who are supposedly promoting mindfulness and wellbeing. I see now what promotes their wellbeing.

★☆☆☆☆

**Fraudulent billing practices and ZERO phone support**

Be very careful dealing with this company. Their material is highly questionable and they extend your membership for $299 automatically and refuse to cancel it even if you try to do it on the same day the membership is renewed. I foolishly subcribed to their app, barely used it, did not know that it was on auto renew and got stuck with another year of worthless non-cancelable membership. Credit card dispute is ongoing. This screams FRAUD. Totally dishonest and horrible customer service. Can't speak with anyone on the phone. Communication is through email only with 2 days lag time. Beware and stay away.

★☆☆☆☆

**BEWARE! Dishonest & No Customer Care**

I signed up a year ago, not realizing that the membership auto-renewed. Today I received a receipt for another subscription. I contacted customer service immediately saying that I want to cancel and be refunded. I was told auto renew is not refundable and I should have cancelled when I was notified that the membership was renewing. I was NOT notified. The agent told me he would transfer me and to stay on the chat. No one got back to me. For a platform marketed about spirituality and personal growth, the lack of care for their customers is extremely distasteful

> **Got charged with the auto-renewal**
>
> Got charged with the auto-renewal. There is no button on the site to turn off auto-renew. Their customer service is AI (in training) that does not help but refers you to their site. Cancelled membership, got charged for a whole year. No refund, canceled within 15 days.

### H. Mindvalley's Scheme Injured Plaintiff

98. Plaintiff paid $199.50 for a Mindvalley membership on or about October 19, 2024.

99. Plaintiff's Mindvalley membership included a 15-day trial period. During the trial period, Plaintiff decided she did not want to continue with Mindvalley.

100. On or about October 23, 2024, Plaintiff cancelled her Mindvalley subscription and requested a refund. Mindvalley sent Plaintiff a written acknowledgment of the cancellation and promised a refund in "approximately 7–14 working days." The written acknowledgment provided to Plaintiff is reproduced on the following page:


10:16
81%
Refund & Cancel
Refund Details
MEMBERSHIP
Mindvalley
Membership
DISCOVER
Discover ••• 0189
Tax/VAT
$0.00
Total Refund
$199.50
Once you've requested a refund, it takes approximately 7-14 working days for the amount to be credited to your bank account.
Full refund policy
Questions or concerns?
We're here to help. Find instant answers on our Support Center

101. Because Mindvalley confirmed the refund in writing, Plaintiff believed that she would receive the $199.50 refund for the October 2024 charge. Unbeknownst to Plaintiff, Mindvalley never provided the refund.

102. On or about October 19, 2025, despite acknowledging that Plaintiff cancelled her Mindvalley subscription during the free trial, Mindvalley automatically renewed her account. Plaintiff paid $199.50 for the renewal.

103. On or about October 22, 2025, Plaintiff contacted Mindvalley support regarding the renewal payment and requested a refund, which Mindvalley refused to provide.

104. It was not until on or about October 27, 2025 that Plaintiff suspected Mindvalley had never provided her a refund for the October 2024 charge. Plaintiff therefore contacted Mindvalley support regarding her timely refund request for the October 2024 Mindvalley charge. Mindvalley refused to honor its promised refund.

105. On or about October 28, 2025, Plaintiff disputed the October 19, 2025 renewal charge with her credit card company.

106. On or around January 2, 2026, Mindvalley finally agreed to refund Plaintiff for the October 2025 renewal. Plaintiff received her $199.50 refund on January 3, 2026, and her credit card company removed the credit for that same amount.

107. Plaintiff disputed the October 2024 charge with her credit card company, but the dispute was rejected as untimely. This dispute was reported to the consumer credit reporting agencies (Innovis, Experian, TransUnion, and Equifax), meaning Mindvalley's unlawful withholding of the refund may negatively affect Plaintiff's credit status.

108. Plaintiff was injured when Mindvalley refused to provide its promised $199.50 refund for the October 2024 charge and when Mindvalley charged Plaintiff $199.50 in October

2025 for an automatic renewal of a subscription that Mindvalley acknowledged had been cancelled.

109. Mindvalley wrongfully deprived Plaintiff of use of the funds from the $199.50 October 2025 renewal charge. From October 19, 2025 to January 3, 2026, Plaintiff was unable to use those funds.

110. All told, Mindvalley unlawfully charged Plaintiff $399.00 and has only refunded $199.50 of that money, leaving Plaintiff with an out-of-pocket loss of $199.50.

111. Plaintiff was also injured by Mindvalley's subscription practices because, had they known the truth about Mindvalley's intentionally misleading subscription practices, they would not have purchased a Mindvalley membership.

112. Plaintiff intends to purchase products and services in the future for herself from online wellness and self-help platforms, including Mindvalley, as long as she can gain some confidence in Mindvalley's representations about its products and services and subscription practices. Moreover, Mindvalley still has Plaintiff's payment information and could use it to process unauthorized payments in the future, as it did in October 2025.

## RULE 9(B) ALLEGATIONS

113. To the extent necessary, as detailed in the paragraphs above and below, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity:

114. **WHO**: Defendant sells services to consumers in New Jersey through a deceptive and unlawful subscription scheme by making the material misrepresentations and omissions alleged in detail above in violation of New Jersey consumer protection statutes and the common law, including with respect to Mindvalley's refund policy, automatic renewal policy, and cancellation process, leaving many consumers who sign up for a Mindvalley service paying for

illegal subscriptions.

115. **WHAT**:

- **Mindvalley misrepresented its refund policy.** Mindvalley promises consumers a "100% Risk-Free" 15-day trial period, during which they can secure a refund by "cancel[ing] with one click." In reality, cancellation does not secure a refund. To get their money back, the consumer must separately request a refund in addition to canceling—a material condition never disclosed during the enrollment process. Even if consumers figure out that they must affirmatively request a refund, making that request requires navigating a multi-step, confusing maze of windows, menus, and pop-ups with built-in "dark pattern" obstacles designed to prevent users from making their request successfully. Worse, Mindvalley fails to offer refunds from consumers who successfully navigate Mindvalley's byzantine refund process.

- **Mindvalley falsely conflated cancellation with requesting a refund.** In its marketing and enrollment pages, Mindvalley repeatedly conflates "refund" and "cancellation," misleading consumers into believing that a timely cancellation automatically triggers a refund. Instead, Mindvalley treats "cancellation" as merely turning off autorenewal, while withholding funds unless the user separately pursues the refund process.

- **Mindvalley fails to disclose or conceals material facts about its automatic renewal terms.** Mindvalley's payment page and enrollment banners do not disclose and/or conceal from consumers that a Mindvalley membership will automatically renew until canceled; provide a description of how a consumer can cancel; make clear that recurring charges will be imposed automatically; or state the length of the automatic renewal term (or that it will be continuous). These facts are material to consumers' ability to make intelligent decisions in the selection of products or services. Mindvalley's payment page likewise fails to disclose and/or conceals the price at which the membership will automatically renew and conceals the link to Mindvalley's Terms & Conditions.

- **What little information Mindvalley did disclose was designed to be concealed from the consumer.** Where Mindvalley does provide limited disclosures, they are displayed in small, low-contrast text, intentionally bypassed by "jump links," or obscured by brightly colored graphics, banners, and calls to action that deliberately draw the consumer's attention elsewhere. These design choices intentionally hide material terms from consumers and deprive them of the ability to make an informed decision or provide affirmative consent.

- **Mindvalley deliberately obstructed users' efforts to cancel.** Mindvalley buries its cancellation mechanism deep within its account portal, requiring users to navigate multiple menus to find it. Even when consumers do find the cancellation mechanism, they are presented with pop-ups and misleading screens that discourage cancellation through misleading prompts and extra steps. This is a classic "roach motel" dark pattern design: easy to get in, but hard to get out. Worse, Mindvalley did not honor customers' cancellation, charging them for additional automatic renewals and refusing to offer refunds for those unlawful charges.

- **Mindvalley issued post-purchase acknowledgment emails that omitted material automatic renewal offer terms and information on cancellation.** Mindvalley's post-purchase emails omit automatic renewal offer terms material to consumers' ability to make an informed decision, including providing no description of how to cancel.

- **Mindvalley fails to provide adequate notice of upcoming renewals.** On information and belief, Mindvalley did not send any notice whatsoever of upcoming renewals during part of the class period. For those notices that were sent, Mindvalley failed to include that subscriptions continue until canceled or any information whatsoever about cancellation.

- **Mindvalley reactivated cancelled accounts and charged those accounts without authorization.** Mindvalley represents to consumers that they may cancel their subscriptions at any time to "avoid future charges." In reality, Mindvalley maintains a practice of ignoring these cancellations or unilaterally reactivating accounts that were successfully cancelled, often months or years after the consumer terminated the relationship. Without providing notice or obtaining any new authorization, Mindvalley uses stored payment information to initiate fresh charges against these cancelled accounts. These unauthorized transactions are executed without the consumer's consent and in direct contradiction to Mindvalley's express representations that "no further charges" would occur, effectively forcing consumers back into a paid subscription they already took affirmative steps to terminate.

116. **WHERE**: Mindvalley's deceptive and unlawful subscription scheme is conducted through its website, mobile/tablet/desktop apps, and electronic communications with customers.

117. **WHEN**: Mindvalley has been engaging in its deceptive and unlawful subscription scheme for years, and the scheme is ongoing. For a specific example, Mindvalley used its deceptive and unlawful subscription practices scheme when Plaintiff enrolled in a Mindvalley subscription

in October 2024, by failing to offer its promised refund in October 2024, through Mindvalley's acknowledgement email sent to Plaintiff, Mindvalley's renewal of Plaintiff's cancelled account in October 2025, and through Mindvalley's refusal to refund the October 2024 charge and its three-month delay in refunding the October 2025 charge. Mindvalley uses the same or substantially similar deceptive and unlawful subscription practices scheme for all of its customers.

118. **WHY**: Mindvalley uses its deceptive and unlawful subscription scheme to trap its customers into paying for Mindvalley subscriptions. As a direct result of this scheme, Mindvalley has successfully reaped tens of millions in unlawful charges at the expense of unsuspecting customers.

119. **HOW**: Mindvalley conducts its deceptive and unlawful subscription scheme by making the material misrepresentations and omissions in violation of New Jersey consumer protection law and the common law alleged in detail above.

## **CLASS ACTION ALLEGATIONS**

120. Plaintiff brings this action on her own behalf and additionally, pursuant to Rule 23(b)(2) and (3) of the Federal Rules of Civil Procedure, on behalf of a class that is preliminarily defined as all Mindvalley customers in New Jersey (including customers of companies Mindvalley acts as a successor to) who were automatically enrolled into and charged for at least one month of a Mindvalley subscription at any time from the applicable statute of limitations period to the date of judgment (the "Class").

121. Plaintiff also brings this action on her own behalf and additionally, pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of a class that is preliminarily defined as all Mindvalley customers in New Jersey (including customers of companies Mindvalley acts as a successor to) who canceled a Mindvalley subscription within 15 days of purchase but

were not issued a refund at any time from the applicable statute of limitations period to the date of judgment (the "Trial Subclass").

122. Plaintiff also brings this action on her own behalf and additionally, pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of a class that is preliminarily defined as all Mindvalley customers in New Jersey (including customers of companies Mindvalley acts as a successor to) who canceled a Mindvalley subscription but were later charged for an automatic renewal at any time from the applicable statute of limitations period to the date of judgment (the "Cancellation Subclass").

123. As alleged throughout this Complaint, the Class, Trial Subclass, and Cancellation Subclass claims all derive directly from a single course of conduct by Mindvalley. Mindvalley has engaged in uniform and standardized conduct toward the Class, Trial Subclass, and Cancellation Subclass and this case is about the responsibility of Mindvalley, at law and in equity, for its knowledge and conduct in deceiving its customers. Mindvalley's conduct did not meaningfully differ among individual Class Members in its degree of care or candor, its actions or inactions, or in its false and misleading statements or omissions. The objective facts on these subjects are the same for all Class Members.

124. Excluded from the Class are: Mindvalley; any parent, subsidiary, or affiliate of Mindvalley; any entity in which Mindvalley has or had a controlling interest, or which Mindvalley otherwise controls or controlled; and any officer, director, employee, legal representative, predecessor, successor, or assignee of Mindvalley. Also excluded are federal, state and local government entities; and any judge, justice, or judicial officer presiding over this action and the members of their immediate families and judicial staff.

125. Plaintiff reserves the right, as might be necessary or appropriate, to modify or amend the definition of the Class, Trial Subclass, Cancellation Subclass, and/or add Subclasses, when Plaintiff files her motion for class certification.

126. Plaintiff does not know the exact size of the Class since such information is in the exclusive control of Mindvalley. Plaintiff believes, however, that the Class encompasses thousands of consumers whose identities can be readily ascertained from Mindvalley's records. Accordingly, the members of the Class are so numerous that joinder of all such persons is impracticable.

127. The Class is ascertainable because its members can be readily identified using data and information kept by Mindvalley in the usual course of business and within its control. Plaintiff anticipates providing appropriate notice to each Class Member in compliance with all applicable federal rules.

128. Plaintiff is an adequate class representative. Plaintiff's claims are typical of the claims of the Class and do not conflict with the interests of any other members of the Class. Plaintiff and the other members of the Class were subject to the same or similar conduct engineered by Mindvalley. Further, Plaintiff and members of the Class sustained substantially the same injuries and damages arising out of Mindvalley's conduct.

129. Plaintiff will fairly and adequately protect the interests of all Class Members. Plaintiff has retained competent and experienced class action attorneys to represent her interests and those of the Class.

130. Questions of law and fact are common to the Class and predominate over any questions affecting only individual Class Members, and a class action will generate common answers to the questions below, which are apt to drive the resolution of this action:

a. Whether Defendant's conduct violates the CFA;

b. Whether Defendant's conduct violates the applicable common law doctrines;

c. Whether Defendant was unjustly enriched as a result of its conduct;

d. Whether Class Members have been injured by Defendant's conduct;

e. Whether, and to what extent, equitable relief should be imposed on Defendant to prevent it from continuing its unlawful practices; and

f. The extent of class-wide injury and the measure of damages for those injuries.

131. A class action is superior to all other available methods for resolving this controversy because: (1) the prosecution of separate actions by Class Members will create a risk of adjudications with respect to individual Class Members that will, as a practical matter, be dispositive of the interests of the other Class Members not parties to this action, or substantially impair or impede their ability to protect their interests; (2) the prosecution of separate actions by Class Members will create a risk of inconsistent or varying adjudications with respect to individual Class Members, which will establish incompatible standards for Defendant's conduct; (3) Defendant has acted or refused to act on grounds generally applicable to all Class Members; and (4) questions of law and fact common to the Class predominate over any questions affecting only individual Class Members.

132. Further, the following issues are also appropriately resolved on a class-wide basis under Federal Rule of Civil Procedure 23(c)(4):

a. Whether Defendant's conduct violates the CFA;

b. Whether Defendant's conduct violates the applicable common law doctrines;

c. Whether Defendant was unjustly enriched as a result of its conduct;

d. Whether Class Members have been injured by Defendant's conduct; and

e. Whether, and to what extent, equitable relief should be imposed on Defendant to prevent it from continuing its unlawful practices.

133. Accordingly, this action satisfies the requirements set forth under Rules 23(a), (b)(2), (b)(3), and (c)(4) of the Federal Rules of Civil Procedure.

## COUNT I

### VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT
### N.J. REV. STAT. § 56:8-1 ET SEQ.

134. Plaintiff incorporates by reference all preceding and subsequent paragraphs.

135. Plaintiff brings this claim on her own behalf and on behalf of each member of the Class.

136. The New Jersey Consumer Fraud Act prohibits, *inter alia*:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise . . .

N.J. Rev. Stat. § 56:8-2.

137. Defendant's material concealment, suppression, and omissions with respect to its subscription, refund, and cancellation practices, as described above, constitute actionable omissions in connection with the marketing, advertising, sale, and promotion of Mindvalley subscriptions in violation of the CFA. Specifically, as detailed herein, Defendant made, and continues to make, the following material omissions, including:

a. Failing to inform consumers that Mindvalley subscriptions will automatically renew until canceled;

b. Failing to explain how a consumer can cancel a Mindvalley subscription;

c. Failing to make clear that recurring charges will be imposed automatically (instead of, for example, through consumer opt-in at the end of the payment period);

d. Failing to state the length of the autorenewal term (or that it will be continuous);

e. Concealing automatic renewal offer terms in deemphasized text;

f. Omitting automatic renewal offer terms that are material to consumers' ability to make intelligent decisions in the selection of products or services, both before, during, and after a Mindvalley subscription purchase; and

g. Omitting how to complete Mindvalley's nine-step process for cancellation and/or refunds that is specifically and intentionally designed to thwart cancellations and refund requests; and

h. Failing to inform consumers that they must both cancel and affirmatively request a refund to obtain a refund.

138. The information Defendant omitted, concealed, and suppressed would have been material to any consumer deciding whether to enroll in a Mindvalley subscription.

139. Defendant also engaged in affirmative misrepresentations, including:

a. Representing its 15-day "risk-free" trial process as permitting users to obtain a refund by "cancel[ing] within 15 days, one-click";

b. Failing to respect cancellation requests and automatically renewing consumers' accounts even after they cancel; and

c. Failing to respect refund requests and refusing to refund consumers.

140. Defendant's false, deceptive, and misleading statements would have been material to any consumer deciding whether to enroll in a Mindvalley subscription.

141. Defendant's misrepresentations and omissions were outside the norm of reasonable business practices, unconscionable, and constitute substantial aggravating circumstances under the CFA. Had Mindvalley not committed the misrepresentations and omissions detailed herein, Plaintiff would not have agreed to enroll in a Mindvalley subscription.

142. Defendant made these false, deceptive, and misleading statements and omissions with the intent that its customers rely upon such statements.

143. Plaintiff and Class Members agreed to purchase Mindvalley subscriptions and suffered ascertainable loss as a direct and proximate result of Defendant's actions in violation of the CFA.

144. As a consequence of Defendant's wrongful actions, Plaintiff and Class Members suffered an ascertainable monetary loss, including but not limited to the price of their Mindvalley subscriptions.

145. Plaintiff and Class Members suffered an ascertainable loss caused by Defendant's misrepresentations and omissions because they would not have enrolled in a Mindvalley subscription had the true facts concerning Defendant's subscription, cancellation, and refund practices been known.

146. By reason of the foregoing, Defendant is liable to Plaintiff and Class Members for trebled compensatory damages; punitive damages; attorneys' fees, and the costs of this suit. N.J. Rev. Stat. §§ 56:8-2.11, 8-2.12, 8-19.

147. Defendant knows full well that it engages in unconscionable subscription, cancellation, and refund practices, and the misrepresentations and omissions it makes with regard to such practices were made to induce customers to enroll in Mindvalley subscriptions so it can reap outrageous profits to the direct detriment of its New Jersey customers and without regard to the consequences its charges cause such consumers. Defendant's conduct was intentional, wanton, willful, malicious, and in blatant disregard of, or grossly negligent and reckless with respect to the well-being of Plaintiff and Class Members. Defendant is therefore additionally liable for punitive damages, in an amount to be determined at trial.

## COUNT II

## CONVERSION

148. Plaintiff incorporates by reference all preceding and subsequent paragraphs.

149. Plaintiff brings this claim on her own behalf and on behalf of each member of the Class.

150. Plaintiff and the Class own and have a right to possess the money that is in their respective bank accounts, internet payment accounts, and/or credit cards.

151. Defendant substantially interfered with Plaintiff's and the Class's possession of this money by knowingly and intentionally making unauthorized charges to their bank accounts, internet payment accounts, and/or credit cards for Mindvalley subscriptions.

152. Plaintiff and the Class never consented to Defendant's taking of this money from their bank accounts, internet payment accounts, and/or credit cards.

153. Defendant wrongfully retained dominion over this monetary property and/or the time-value of the monetary property.

154. Plaintiff and the Class have been damaged by Defendant's wrongful taking and/or possession of such money from their bank accounts, internet payment accounts, and/or credit cards in an amount that is capable of identification through Defendant's records.

155. By reason of the foregoing, Defendant is liable to Plaintiff and the Class for conversion in an amount to be proved at trial.

## COUNT III

## UNJUST ENRICHMENT

156. Plaintiff incorporates by reference all preceding and subsequent paragraphs.

157. Plaintiff brings this claim on her own behalf and on behalf of each member of the Class.

158. As a result of its unjust conduct, Defendant has been unjustly enriched.

159. By reason of Defendant's wrongful conduct, Defendant has benefited from receipt and maintenance of improper funds, and under principles of equity and good conscience, Defendant should not be permitted to keep this money.

160. As a result of Defendant's conduct, it would be unjust and/or inequitable for Defendant to retain the benefits of its conduct without restitution to Plaintiff and the Class. Accordingly, Defendant must account to Plaintiff and the Class for its unjust enrichment.

## COUNT IV

## MONEYS HAD AND RECEIVED

161. Plaintiff incorporates by reference all preceding and subsequent paragraphs.

162. Plaintiff brings this claim on her own behalf and on behalf of each member of the Class.

163. Defendant received moneys from Plaintiff and from each member of the Class.

164. The moneys belong to Plaintiff and each member of the Class.

165. Defendant has not fully returned the moneys.

166. Plaintiff, on behalf of herself and the members of the Class, seeks the return of the moneys in an amount to be proved at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

(a) Issue an order certifying the Class defined above, appointing Plaintiff as the Class representative, and designating Wittels McInturff Palikovic as Class Counsel;

(b) Find that Defendant has committed the violations of law alleged herein;

(c) Determine that Defendant has been unjustly enriched as a result of its wrongful conduct, and enter an appropriate order awarding restitution and monetary damages to the Class;

(d) Enter an order granting all appropriate relief including injunctive relief on behalf of the Class under the applicable laws;

(e) Render an award of compensatory damages of at least $50,000,000, the exact amount of which is to be determined at trial;

(f) Issue an injunction or other appropriate equitable relief requiring Defendant to refrain from engaging in the deceptive practices alleged herein;

(g) Declare that Defendant has committed the violations of law alleged herein;

(h) Render an award of punitive damages;

(i) Enter judgment including interest, reasonable attorneys' fees, costs, and expenses; and

(j) Grant all such other relief as the Court deems appropriate.

**JURY DEMAND**

Plaintiff demands that a jury determine any issue triable of right.

**NOTICE TO ATTORNEY GENERAL**

A copy of this Complaint will be mailed to the Attorney General of the State of New Jersey, pursuant to N.J. Rev. Stat. § 56:8-20.

Dated: February 9, 2026

**THE LONG LAW FIRM, PLLC**

/s/ James Austin Long
James Austin Long
120 E. Washington Street, Suite 928
Syracuse, New York 13202
Tel: 315-991-8000
jlong@long.law

**WITTELS MCINTURFF PALIKOVIC**
Ethan D. Roman *
305 Broadway, 7th Floor
New York, New York 10007
Tel: (914) 775-8862
edr@wittelslaw.com

**pro hac vice application forthcoming*

*Counsel for Plaintiff and the Proposed Class*